Next case this morning is 25-1034. Forgive me, counsel, if I mispronounce it, but United States v. Coad, okay. 25-1034. Counsel for appellant, make your appearance and proceed, please. Thank you. John R. Ceci from the Federal Health Defender's Office in Denver, appearing for Appellant John Coad. Your honors, after finding Mr. Coad incompetent and unrestorable, the district court erred by ordering him committed for hospitalization under sections 42-46a and b for a so-called dangerousness evaluation. The problem is that 42-46 doesn't authorize the court to order such a commitment, and this is so for three principal reasons. First, the plain terms of 42-46. They don't provide for a new commitment. Rather, they tell us that the federal civil commitment procedure is initiated by the filing of a certificate of dangerousness, and that that certificate may be filed on behalf of three categories of people. Who those people are and when is what that 42-46a tells us. That is, that the director of a facility in which a defendant is hospitalized can issue a certificate for someone who is serving a sentence that is about to expire, that is someone who has been committed under 42-45 from BOP, not at issue here, someone who is hospitalized, committed under 42-41d, which Mr. Coad was previously, and someone against charges. Where is Mr. Coad? Mr. Coad is at the Federal Pretrial Detention Center in Englewood, Colorado. One of the problems, it seems like a practical problem with trying to make all these statutes work, is this. He's out at the Federal Medical Center with the charge of see if you can make him competent. And so, the Federal Medical Center makes him competent. And then, so at the time they make him competent, they're not going to issue a certificate of dangerousness. They have, in their minds, fixed the problem. So they send him to Denver. In route, and while he's there, he quits taking his meds. He becomes incompetent again, and the court so finds. How is there ever, in your position as well, they didn't issue a certificate of dangerousness, so he's not going to be committed. I mean, how's he ever going to get there in this fact pattern? I mean, maybe your answer is he's never going to get there. Well, I don't know that he's going to get there at this stage in this fact pattern, but in many other, if not most, fact patterns, a defendant would be subject to that. There's a number of different instances, right? First, you can issue that certificate under the 4241D commitment. And we've pointed to two examples in our reply brief of situations where a Federal Medical Center filed the certificate while criminal proceedings were going, abated that civil commitment proceeding, and while the criminal case proceeded. Was there any request that they take that action, or did it just happen sui sponte by the Federal Medical Center? My understanding is that that's something that happens and can be done, but I don't think there's anything in either of those cases that I'm aware of that indicates that one way or the other. I think it's good practice, though, because it's consistent with 4246, which is that while someone is committed under 4241D, that is when the facility director is authorized to do that. So they could have done that here. They also could have sent Mr. Code back for further restoration efforts under 4241D2. Well, they found he wasn't restorable. Well, the district court found he wasn't restorable, and that's why we're here, because the 4241D process is now over. And at the time that he was found unrestorable, where was he physically? I'm just trying to understand. At the time he was found unrestorable, he was back in Colorado, in the District of Colorado. He had been evaluated at FMC Devins. They had found him to be restored, sent him back, had not filed a certificate of dangerousness in the event that the district court disagreed. It's not the medical director that makes the final determination. And then he was returned. And at that moment, when he was found not restorable, he was not hospitalized, right? I don't think there is any argument that he is hospitalized. He was not at that moment? And yet, 4246, one of the requirements is if the director of the facility in which a person is hospitalized. And for me, I guess I wonder why that language doesn't mean that the district court, in our instance that we just described, doesn't have the power to commit the person back for hospitalization, and then we start to go through the 4246 procedures. I just don't think that's what the words mean in 4246. What do you mean, is hospitalized is the meaning? It means that the person is hospitalized. And there are multiple ways in the overall statutory scheme in which a person can be hospitalized, 4241D, which here occurred for a four-month period under 4241D1 for a restoration proceeding. But then he came out of that. And then he came out of that and was no longer hospitalized. And so he's got to be re-hospitalized if you're going to go under 4246, no? You could be re-hospitalized under 4241D2. You could be, but the court decided not to, as Judge Carson says. This just isn't going to work out. And so at that point, you have dangerousness hovering. And that's a big consideration, you'll agree. For the person who's threatened in this case, that's about as big as you can get. And so why do I not read 4241D where it says the provisions of 4246 will then apply? So I turn to 4246 and I see it has to be hospitalized. Okay, District Court, you have the authority to say back to the hospital for this dangerousness evaluation. Doesn't it just make sense that way? I don't think it does because I think the statutory scheme is narrowly drawn to balance the government's legitimate interests in restoration with the longstanding principle articulated by the Supreme Court that we don't just hold people in indefinite detention because they're mentally ill. And so there are specific expressly enumerated circumstances throughout the statute that identify when an evaluation can be done, when someone can be committed for hospitalization. And the express articulation of those instances in the absence of any express articulation here, I think really answers that question. But I'm not suggesting an indefinite hold without some sort of judicial process. I'm suggesting that 4246, in tandem with 4241D, says get the person back to the hospitalization. Now everybody knows what's going on. The director of the facility looks up and there's Mr. Cote again. Why are you here? There's only one answer. It's because I have to decide as the director if you are dangerous to others. And so the process kicks and there's a time limit on getting that done. And if the director determines dangerous and files a certificate, then the court sets a hearing. At the end of the day, everyone is protected. The defendant is protected and presumably the defendant doesn't want to get out and harm people. So the defendant has an interest in this as well. But certainly the person who is being threatened or is in danger has a big interest. I would say that that is a statutory scheme that Congress potentially could draw within constitutional limits, but it's not the statutory scheme articulated in 4241 and 4246 because, I'm sorry. It was my understanding, Willie, the nub of your argument relates to, in part, the colloquy you're having with Judge Phelps, which is that it says in which a person is hospitalized. But the question, it begs the question, how do they get to be hospitalized? And at least I understood your position to be, and I think rightly so, it is no small thing to deprive someone of their liberty and put them in the hospital. And that there are a variety of things in the statute that explain exactly, if you're going to do this thing, what you have to do. And that wasn't done here. It wasn't done here. And I think to both your point and Judge Phelps' concern, 4246 begins that a person is hospitalized, right? And so the question is, again, how do they get there? And 4241 tells us one path to get there. 4245 is another path to get there. That is for someone who is already serving a sentence. The BOP can say, we think they should go hospitalized. And I think what's essentially contemplated here is a parallel process. And there's nothing unusual about that, right? When you're committed under 4241D for a competency restoration, the Bureau of Prisons is always charged with evaluating your dangerousness in the institutional capacity under Harper v. Washington. It makes perfect sense that they'd be also charged with evaluating you under 4246. It might make perfect sense, but things can get lost in the gaps. And so here comes this person for restoration. A director of a facility might not know, oh, I'm supposed to determine dangerous now as well, because there might be a chance later. And that's the second point, which is just because you're dangerous at one moment in time doesn't mean that you're going to be dangerous later. So that early determination of danger may be unfair to the defendant who no longer is dangerous. And so if that is the situation, there are multiple avenues to hospitalize someone that are statutorily authorized, whether that's under a continued restoration effort, whether that's under forcible medication, under cell, whether it's a continuation of hospitalization under 4241D2. Now, we're talking a lot about 4241 here, and that's odd because it's not the basis of the district court's ruling below, which was 4246, because the government disavowed reliance on 4241 below. If we were having a 4241 argument below, this appeal would look very different because the outer bounds of an extension or a commitment for hospitalization under 4241 are reasonableness. And the record that would have been developed below, the legal arguments that would have been made, would have been situated around the reasonableness of a 4241D commitment. Reasonableness, but the court declared him to be unrestorable.  So that essentially terminated the 4241 process, right? Exactly. I'm just saying in a hypothetical world in which there was a suggestion of another avenue towards recommitment in another case, that would be the discussion and that would be the determination. Here, he was found unrestorable. 4241D is over. And going back to this question about what could have happened if he were a prisoner, under 4245, that prisoner could have objected, right? Yes. And the way this played out, there was no basis for an objection. I mean, the basis for the objection was our district court's opposition. But I mean, there was a statutory provision that would have governed whether he could be hospitalized again. There is no statutory provision for what the district court did here, right? I don't think there's any statutory provision for that. And, you know, again, I think that there are, again, to the point about what else they could have done, what the Bureau would have known. I mean, the statute's been on the books since 1940, and they were amended in 1984. I don't think it's realistic to suggest the Bureau of Prisons, you know, wouldn't know what to do or how to do this here, particularly with a man who's been evaluated, you know, about a dozen times as many years, that he wouldn't have been subjected to that. And particularly, as we pointed out, right, that there is a path that the Bureau obviously follows in other cases to file a certificate when they think someone is dangerous and have a basis to believe, because they don't make the ultimate determination. The court does. They're making a recommendation. Sorry, Judge. In whose custody is he, your client? I don't know that I can answer that on the record because it's not fully developed below. My personal opinion and assessment of it is that he's in the custody of the marshals at a pre-trial detention center right now because he's been found unrestorable, criminal charges have not been dismissed, and so he'd be essentially detained under the Bill of Reform Act. I mean, under 4241, though, if he was sent out to the district court for a competency hearing and he was found to be incompetent, I mean, doesn't that sort of suggest that he's still in the custody of the attorney general and that all of this time that they had a duty to hospitalize him? He may be in the custody of the attorney general, but he's certainly not hospitalized. No, I didn't say he was. I said he should be and that they had a duty to do so. You know, again, if we were having a, if the commitment order was sought below in 4241D, that is something that, you know, a factual development that would have been explored because it would have mattered. It doesn't matter here whose custody he's in under the district court's theory that it can essentially commit him at any point under 4246A and B. And I just want to say that 4246B clearly has no application to the criminal court authorizing a commitment under these, a commitment for an evaluation of these circumstances. That statute is, that provision is clearly delineated to the civil commitment process. I'm going to go ahead and maybe Judge Holmes will give you a little leeway here, but what do you do with the express reference in 4241 to 4246? I mean, there's got to be some interplay between these two statutes. Otherwise, they wouldn't both be referring to each other. There absolutely is an interplay. When you, when someone is found to be unrestorable, they're subject to 4241. I mean, excuse me, they're subject to 4246. Okay, but that's the problem. I mean, you can, that's lip service, but in your current position in the case is that he finds he's not restorable. He's subject to 4246, but there's basically no way to begin the commitment process. In this particular case, yes. In most cases, if a certificate has been filed for someone, then you are subject to it and it applies to you. But that's reading out the possibility that you're going to have someone who is certified over for a hearing as competent by the medical center. And they may not think they're a danger at the time, but by the time they get to the district court and become incompetent again, there are lots of indications that maybe they are a danger. So the medical center never did have a really fair opportunity to evaluate and file a certificate of dangerousness. Yeah, I'm saying out of time, if I can. Yes, please, sir. So I guess there are two quick responses to that. One is, again, the statutory scheme that Congress created does have vehicles for recommitment that would satisfy the standards that are articulated in 4246 under 4241. They attempt restoration, continue hospitalization until the proceedings are dismissed. That's not what was sought here. And the 4246 commitment simply doesn't apply. So what if the district court had done this instead, said, here we go. We've been around once. We're going to do it again. I'm sending you back a reasonable cause to think that you're incompetent. We're going to do an evaluation, which everybody knows what that's going to say. And, hey, while you're at it, director of the facility, do a certificate of dangerousness if you think this person's dangerous. Would you be satisfied with that? I would. Satisfied is not the verb. So I would be satisfied conceptually from the problem that exists in this case, right, that there is a statutory basis for committing someone under those circumstances. But the challenges, we would still have a multitude of challenges to a 4241D commitment, whether that is the propriety of doing that under 4241D2 on the record that exists, or D2, the other provisions, the outer bounds of reasonableness that apply to a 4241D commitment extension. But that would be a different fight, and that's the point. That's not the fight we have now. And if I understood correctly, the charges are still pending in this case, are they not? The government moved to dismiss the charges, but the district court didn't grant that motion, so they are still pending. So essentially the cycle in some ways for 4241 is not entirely closed. I mean, it is closed in one sense, in the sense that there was a determination of unrestorability. So in some sense that's terminated, right? Yeah, I think it is terminated because all of those predicate acts of restoration commitment extension have essentially passed. We found restorability analysis. We go to the subject to language. Again, to my conversation with Judge Carson, I think he is subject to 4246, but it does not apply to him because the preconditions have not met. Because you couldn't get him in? Because no certificate was filed during the time during which it could be, yes. Okay, thank you.  May it please the court, Bishop Grewell on behalf of the United States. This is a sequential statute. You go through A, B, C, D in 4241, you get to D, it then sends you to 4246. We are not out of 4241D yet. Certainly not out of the custody and also not out of the hospitalization. D1 and D2 have to be met to get to that last line that sends you to 4246. And D2 has not been met in any way. Either the time period has to become unreasonable, he has to be restored such that the trial can proceed, or the charges have to be dismissed. Well, you just declared unrestorable. And so why doesn't that terminate the 4241D proceeding? Because the way it generally proceeds is once he's determined unrestorable, then you get the dismissal of the charges and that's what moves us out. That didn't happen here. That's why below we didn't argue that in fact he was still in D, because we assumed the district court was going to dismiss the charges. But the district court didn't do that. It kept him in 4241D and there's nothing inappropriate about that. In fact, that's why if you go to 4246A, it lists both somebody who's in custody under 4241D and somebody against who the charges have been dismissed. Is that right? Is in custody or was in custody at some point? It said it was. No, fair enough. But if the dismissal of charges, there's no real reason for the 4241D to be included there then, because the dismissal of charges would get you that anyway. And you could just say dismissal of charges if that's how you're getting 4246A. Well, it wouldn't matter here because the charges aren't dismissed. And yet at one point he was subject to subsection D, and so even though he's not at this moment, qualifies. Just wondering if you read it the same way. I think that's right. But again, if you look at the plain text of D2, nothing in D2 says once you're restorable, we're out of D2. Once you're unrestorable, we're out of D2. Well, it doesn't say that. The language, 4241D2A, speaks about the notion of the court making a finding that there's a substantial probability additional time will allow for restoration or pending charges, whichever is earlier. Well, the court has made a determination that he's unrestorable. And so why doesn't that kick you then right to that imperative language of D2, which says, okay, now that you're unrestorable, this is what happens. The problem here is this is what happened, usually happens while he's still hospitalized under 4241D, and that's not where we are now. Because A says if his condition is so improved that we may proceed to trial, then A has been satisfied. You're talking about when A is not, when he hasn't been restored. So A is not satisfied. And so the way that you're going to get out of it is through B. There's been no finding that he's been restored. That's what gets A triggered. B being 4246B? 4241D2A is satisfied when he is restored and we can go to trial, not when the court finds he's not restored. That does not satisfy 4241D2A. A speaks, though, about continued detention, not detention, whatever word you want to quote, continued hospitalization if the court makes a substantial probability determination that this will allow for restoration. Am I reading that correctly? That is correct. The alternative is everyone is earlier, the charges are dismissed. Okay, so the court has not made a determination that continued hospitalization will allow for restoration. The charges have not been dismissed. Neither one of those is implicated. But what is implicated is the fact that the court now has made a determination he is unrestorable, right? Right, but that's not triggering A. That's not because A is when he is restorable, you get out of it and you proceed to trial and then we end the hospitalization for that. If he's not restorable, then the way you move forward out of that is by the dismissal of the charges. Otherwise, whichever earlier of the charges being dismissed would never occur because the court's always going to make that restorability finding before the charges get dismissed. The dismissal of charges is never going to occur. Okay, the dismissal of charges has not occurred. But the point is the court has said he's unrestorable. And consistent with the argument that we just heard, whether the government could have invoked the 4241 to say, oh, well, you know, the charges are not dismissed. We can try to bring him back in again and try again, Your Honor. Let's try to do it again. Well, that didn't happen here. The court accepted the premise that he was unrestorable. I mean, the government accepted the premise that he was unrestorable. And it seems to me that by that, that last language says, you're unrestorable, you're subject to 4246. The real problem seems to be is the space between saying you're subject to 4246 and how do you get him in the hospital. So I'll move past and assume that we are somehow out of 4241 D2. I don't think we are. But if we are, all that ends, first of all, is the mandatory hospitalization. It does not end the custody of the Attorney General. He is still in the custody of the Attorney General. It just says that that hospitalization should end. First, he can still be hospitalized just by virtue of the custodial relationship. BOP, the third one in the category of 4246A, is somebody who's about to be released from BOP. When they're being released, you can hospitalize them to get that assessment because they're in their custodial relationship. Here he's in the Attorney General's custodial relationship. Well, wait a minute. 4246 speaks to him being in the hospital. When the person is hospitalized, so then if he's about to be released, you can then get your certificate. It's not saying that if he's in the custody of the Bureau of Prisons and he's about to be released that you can then put him in the hospital. I'm just saying that that's an alternative way that that's not the situation here. But when you're dealing with somebody who's been sentenced to prison for so many years, that's what that provision in 4246A is talking about, is somebody who's in BOP custody. And that's not what we've got here, right? No, but it goes to the point of how do you get the hospital analysis for that one? It's by virtue of the custodial relationship. We can still do that here. Why don't you get it by virtue of 4245, where the inmate would then have a right to object, which is not what you have here. 4245 is not talking about when the person's about to be released necessarily. It's when you just have somebody who's in prison, and it says the inmate can't object. If you look to 4245E, it's like, does he still have time? We'll keep him in prison. I think it's by virtue of the custodial relationship.  The thing that puzzles me about that argument, and I know there are multiple arguments here, but the thing that puzzles me about that argument is Congress seems to have gone to great lengths to explain the circumstances under which you can deprive somebody of their liberty to hospitalize them. You have the cell proceedings. You have 4241D. You have multiple ways that you have to make showings. You have to get a hearing. You have to do all this. How can it be, then, that if I've got somebody sitting in prison or in custody waiting charges, that I can say, oh, Attorney General, I just want to put him in prison. You know, he's with me anyway. I mean, put him in the hospital. He's with me anyway. How does that make any sense? I mean, if the Congress has gone through all these pains to create this elaborate procedure where you can deprive somebody of their liberty for hospitalization, that you can say just because he's in our custody, we can do that? I think that they're saying it's, again, the notion of we're going to deprive them of their liberty, one, for the mental assessment, whether they're competent or not. Once you're getting to the dangerousness assessment, I think Congress has said, hey, you then go through this certificate process. Obviously, it's necessary for them to be hospitalized to do that assessment, and I think Congress has provided for that, which I think is the third argument. Where did Congress provide for that? Because the Ninth Circuit clearly indicated that it was relying on the logical imprints. There's no statutory provision that says how he gets back in the hospital in this situation. What is it? Point it out to me. I think it's 4246A by implication, just like when a recipe says bake at 375, it doesn't have to say turn on the oven. And here it says that, one, there are two requirements. One, he has to be hospitalized, which I think both parties agree on, because the language says is hospitalized when the certificate is issued. Second, I think the person has to be due for release. And so the only way that that can happen, that they are hospitalized and they're due for release, is they've been determined to be unrestorable already, or the charges have been dismissed, which again suggests this is sequential, and that we can therefore hospitalize them after the fact to do that dangerousness assessment. The argument that opposing counsels made in their brief and here today is that ordinarily there is a mechanism whereby if somebody is unrestorable, that therefore is subject to 4246, that they get the certificate. It's because they're already in the hospital. In this particular instance, we end up with this factual pattern in which he's not in the hospital. And therefore the question arises, can you just infer, can you just infer as the Ninth Circuit did that, oh, well, you know, the only way we're going to make 4246 work is if we put him back in the hospital. Well, what's the statutory basis for that inference? I think at that point when they're just in a hospital, I guess the factual scenario would be at that point they've decided that they are not restorable and that they're going to be due for release. That they're subject to 4246. You could then implement the dangerous certificate process. And so there are circumstances in which this works like a well-oiled machine. The point is we're sitting here in a circumstance in which it appears that it has not. And then the question becomes, can we, like the Ninth Circuit, say, oh, well, you know, as a matter of logic, you know, the only way we can do a certificate is to put him in the hospital. So we, you know, I have the inherent authority to put him in the hospital. I mean, why is that okay? Again, I think the reason is, one, in the situation where they've been found restorable by the hospital, you don't get out of 4241D, yet you're still in 4241D where they have to be hospitalized. If you do get out of 4241D, and that's the reason that they're due for release, then it's the fact that you're certifying, again, 4246A, says that what you're certifying is, quote, is presently suffering from this condition that as a result of their release this risk is going to occur. And there are no state facilities that are going to be there. You're not making that certification that right now, that as a result of their release that's going to occur and that there are no state facilities that are available unless they're actually going to be released at that point. And that's not something that the director of the facility can determine, whether they're going to be released at that point or not. That's something that works through the courts. And so I think the implication of the fact that 4246 is titled somebody who's due for release, the fact that that certification says they have to be in a hospital and they have to be presently suffering from this condition that as a result of their release is going to result in that, the fact that logically it makes no sense when you're talking about the BOP inmate who's been in prison. You're talking about somebody who's going to go to trial and later on you're going to go through that analysis. It doesn't make sense to do that certification now when years later it might not be valid. So the problem is you can't get this guy back in the hospital is what the other side is saying. You have no mechanism to get him back in the hospital. I think we could have sent him to the hospital without the court order. And I think that's from the fact that we're still in 4241D. It says that we shall hospitalize him. He was only released from the hospital because they found him restored and we're bringing him back for the hearings that will determine is he in fact restored. And if you look at 4241E, it actually says that the court doesn't release him from that hospitalization until the court itself finds that he has been restored at that level. And that did not happen. He wasn't in the hospital though, was he? Because he was out for the hearings about whether his competency had been restored. Why didn't you move to remand him back to the hospital once the court found that he was not competent to stand trial? At that point, that is when we said we didn't. So we said that the court should send him back to the hospital at that point once we found, we gave a notice that we didn't think he was going to be restorable. And then they had a hearing. And our argument was, yep, we don't believe he's going to be restorable. The court should dismiss the charges and send him back to the hospital for this dangerousness assessment. I'm sorry, go ahead. If you're still in 4241D, how do you ever get out of it? So if the court chose to dismiss the charges here, which at some point, well, the time period could become unreasonable. At some point, Mr. Code could say a challenge like, you're still in the D2 period and it's gone on too long. That's one way. The court could dismiss the charges. That's the other way. Those are the two appropriate ways for us to get out of D1. And that's what I think will occur after the dangerousness assessment is done, is that the court will dismiss the charges and he will then be committed pursuant to the 4246A certification if it occurs. So the district court erred. No, I don't think the district court erred. Because I think it could, in fact, say, I'm not going to dismiss the charges. I'm going to rely on the 4241D custody period to send him back to hospitalization. It may have given the wrong reason, but I think it still had the authority to do that. Because the statute says, shall be hospitalized, and we asked for an order that he shall be hospitalized. It may have given the wrong reason. I mean, there's an implication of whether it gave the wrong reason or not. I mean, if it's going to rely on 4246 as opposed to 4241, I mean, the argument that opposing counsel made is we'd have a very, very different case if the court had chosen to implicate and the government had gone along with relying on 4241. But it didn't do that, did it? And may I offer a short response? Yes, of course. So the court did not do that. This court can obviously affirm on any grounds in the record. So that would be the first point. But if this court were to reverse on this, then we're going to go back. The charges are going to be dismissed. And we are now at the period where we say, OK, the charges have been dismissed. We go to 4246, and therefore under 4246A, the implications of that, it's when he's due for release that the certification that must occur while he's hospitalized occurs. We can now send him back to the hospital. And then I imagine we will probably be back up here at that point. Oh, I'm sure you'll be back up here. And that's OK. But wait a minute. Let me play out the scenario. Let's assume they prevail. We go back. The government dismisses the charges. But in that posture, the language says subject to 4246 at the end. But he's still out, though. And, I mean, if the charges are, it seems to me at that point, aren't in 4241 your only option because he doesn't take his meds, and therefore there's a question of competency again? Because if you dismiss the charges, how are you going to get him in the hospital? And, again, I think the argument would be, one, he's still in the custody of the attorney general because 4241D. When you dismiss the charges? Because 4241D says the hospitalization ends, not the custody at that point. The separate Insanity Defense Reform Act custody of 4241, the prefatory paragraph in D. And I think that's what Judge Traxler said in his concurrence in the Curbo decision. And I think that's the reason that the Fourth Circuit Judge Wilkinson said in Berry that even though the charges had been dismissed there, he didn't have to analyze that because he was still in 4241D custody, even though they'd gone on to 4246. The custody doesn't end. Only the mandatory hospitalization ends. And that doesn't mean that permissive hospitalization is not still on the table. But because he's still in our custody, we can still then argue that under 4246A the same thing should occur, that there's this implication that because he has to be in a hospital and because it's when he's due for release or the charges have been dismissed, that it can be certified and we can send him to the hospital under that. 4246A and B, they're separate questions, right? A being can you send him back for hospitalization so the facility director can determine whether to issue a certificate. But even if you can, that doesn't mean necessarily that the district court can do as I think it did here and order this evaluation, psychiatric evaluation under B. You're talking about 4246A and B? Yes. I think that Mr. Koch probably has the better argument that B is not how you get there for A. We made that argument because I think in the Perea decision that we cite in our brief from this court, that's how it occurred was through B. And this court didn't question that, although I don't think that argument was necessarily correct. Well, again, the district court didn't err, but it got it wrong. Well, but is it an error that shouldn't be affirmed on the grounds that it actually had the authority, but it designated the wrong thing for the authority to do it? This all just seems so circular to me. And we've got this idea that we're sort of pretending that he's still hospitalized, but he's not. And then we've got a district court order that's well-aged at this point ordering him back to the hospital, and it's not been, you know, executed on, and he's not been. May I respond to that one point? So, yes, he should still be hospitalized. The Godinez decision from the Ninth Circuit says when you bring him back for the hearing, we're not going to call that as necessarily taking him out of the hospitalization. When the hearing ended here, we had the order, we were sending him back to hospitalization, and then we, you'd have to take judicial notice of this, but it is in the record below, then we agreed to a stay with Mr. Code from that hospitalization for the appeal to proceed, so this issue could be decided. But we were moving forward to sending him back to the hospitalization, and he had only been brought out for the hearing about his restorability. And I think you have to be able to do that even in the shell hospitalization realm, or otherwise you couldn't put him on the stand for one thing to determine his competency or whether he'd been restored. I'm well over my time. No, thank you, counsel. Thank you for your argument. Counsel's over three minutes, judges. Over three minutes. Just give him, please, four minutes. And if you would start, counsel, by I want to understand the implication of a circumstance in which it were to go back and there were a dismissal of the charges. As I understand it from opposing counsel, in that circumstance, he still could be hospitalized under 42, well, that he is, could be hospitalized under 4241 at that juncture. In other words, at least what, and let me put a finer point on it, what I understood to be the circumstance, perhaps wrongly, was that when the court pronounced you're not restorable, at that juncture the whole mechanism of 4241 terminated. What I understand from opposing counsel is that's not right, that essentially when you look at the language of 4241, it doesn't contemplate the termination of 4241, but the idea of even the dismissal of the charges doesn't terminate 4241. So I just need to try to understand. Let's assume you win. How does this play out at that juncture if they dismiss the charges? So a couple of responses to that, I think. One is, you're reading this right, that the 4241D period ends, is terminated at the juncture of the restorability analysis, the 4-month restorability analysis, or a reasonable extension, or when the pending charges are disposed of. And then at the end of that time period specified, then we go into the subject to 4246 discussion, and our argument is exactly the same. So I don't think that is actually right. There is a provision now in 4246A for someone who is currently hospitalized against whom charges are dismissed, that a director can file a certificate, but that wouldn't apply here for the reasons we've discussed today. On the same point, and the tail end of 4241D, where it says, if at the end of the time period specified, it is determined, and so they throw a nice passive verb there, could that be the district court determining it, as opposed to the medical facility director? I think it is the district court. And so if it could be the district court, and the district court is so determined here, then the baton is passed to 4246 by the rest of that sentence.  I'm sorry, no. Well, then we go to 4246, because it says the defendant is subject to the provisions of 4246. And he's already been committed under 4241D, so he was already subject to the provisions of 4246 for purposes of certification, and our argument is exactly the same under that reading. Now I think the crux here, though, is that the government asked the district court to commit Mr. Code for hospitalization under 4246 below. That's why we're here. That's what the district court did. I think very indisputably that was error. You know, I think on a remand, certainly the court has the authority to issue a broad remand, but I think a query, whether if the government invited the error that occurred here, whether it's appropriate to give them a second bite at the apple, or whether the court should simply send it back in for dismissal. Well, what would your position be if there hadn't been a stay entered in this case and your client was actually hospitalized right now? We would still, this court would still have the authority to walk it back because it was an illegal order that was entered. Okay. And I also think, too, that there wasn't a suggestion about affirmance on an alternative, affirmance on a 4241D alternative ground. That argument as an alternative ground doctrine doesn't appear in the government's answer brief, and that only applies when, you know, an issue is dispositive, indisputable, and appears clearly in the record. And I think from our discussion today, it's very clear that the 4241D argument, it does not require both further legal and factual development. And I did just want to say to Judge Carson, in response to your question about custodial status, I think that the fact that the government did, you know, affirmatively ask for a recommitment and re-hospitalization under 4246 is pretty good evidence of whose custody he was in. And on page 69 of volume 1, the defense did represent that he was in the custody of U.S. Marshals, and that was never objected to. But, again, I can't point to something definitive that answers that, but I think it's pretty clear from both of those factors. That's all I have, unless the court has further questions. Nothing further. Could I ask you just one, again, a tail-end question on the tail-end of D. What would it mean for a defendant to be subject to the provisions of 4246 if 4246 doesn't apply? It means that he's subject to it. And if it applies to him, it applies to him. And if it doesn't apply to him, it doesn't apply to him. It means he's subjected to it. Why would you have it? Wouldn't that be surplusage then? Well, it doesn't mean, and it means that if he's subject to it, he's subject to it. If he's not, he's not. Don't you have to read it to somehow incorporate 4246 into the analysis of 4241? I don't think so, because it tells you what to do when a district court has found someone restored. Just as elsewhere in the statute, it tells you what to do when someone is not restored. Just as elsewhere in the statute, it tells you what to do when a person is restored. We initiate the criminal proceedings. All right. Thank you, counsel, for your very fine argument. Case is submitted.